IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

BILLY HATTEN                          §
                                      §
v.                                    §          Case No. 2:15-cv-601-RSP
                                      §
JOHN MATHIS, et al.                   §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Gregg County's Motion for Summary Judgment (Dkt. No. 66) and Plaintiff Billy Hatten's Motion for Summary Judgment (Dkt. No. 67).

## I.  BACKGROUND

Billy Hatten was employed by Gregg County as the Administrative Superintendent for Precinct 4 until his job was terminated on October 1, 2014. Hatten had been hired in 2007 by Gregg County Commissioner John Mathis. Hatten alleges that he was terminated because he ran against Mathis (and lost) in 2014, and that Mathis retaliated by firing him in violation of his First Amendment rights.

The Court recommended summary judgment on February 1, 2016, dismissing with prejudice all of Plaintiff's claims against Defendant John Mathis on the basis of legislative immunity. Dkt. No. 26.   Plaintiff thereafter voluntarily dismissed those claims.   Plaintiff's surviving claims are against Gregg County.

## II.  LAW

### A. Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must identify the basis for granting summary judgment and identify the evidence demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

**B. First Amendment Retaliation**

To establish a prima facie case of retaliation for the exercise of First Amendment rights, a plaintiff must show that: (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) plaintiff's interest in the speech outweighed defendant's interest in promoting government efficiency; and (4) the protected speech caused the adverse employment decision. *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

2

The third factor entails balancing the plaintiff's speech interest against the defendant's interest in promoting government efficiency. Five nonexclusive factors are considered in this balancing test:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

*Jordan v. Ector County*, 516 F.3d 290, 299 (5th Cir. 2008). In "cases involving public employees who occupy policymaker or confidential positions . . ., the government's interests more easily outweigh the employee's." *Brady v. Fort Bend County*, 145 F.3d 691, 708 (5th Cir. 1998). Although this balancing test is a question of law, the Fifth Circuit has recognized that it often involves "factual matters appropriate for determination by a jury." *Id.* at 708 n.7.

## III. ANALYSIS

### A.      Gregg County's Motion for Summary Judgment

Defendant Gregg County moves for summary judgment of no liability based on factors three and four of the *Alexander* test—that Plaintiff cannot prove his First Amendment interest outweighed the County's interest in government efficiency, and that Plaintiff cannot prove his speech caused his termination. Dkt. No. 66.

### 1.      Balancing Interests

Defendant argues it is entitled to summary judgment that Plaintiff's protected speech did not outweigh Defendant's interest in promoting efficiency. Defendant asserts two bases for this argument. *First*, that Plaintiff "held a confidential position as personal staff." Dkt. No. 66 at 16–17. *Second*, even if Plaintiff was not confidential staff, "Plaintiff's performance and

3

behavior . . . places him squarely on the employer's end of the balancing test, meaning that the balance favors Defendant." *Id.* at 17–19.

This Court previously held that there are material fact disputes about the nature of Plaintiff's job duties that prevent summary judgment under a "policymaker" or "confidential employee" theory:

> [Defendant] asserts that he is entitled to qualified immunity because Hatten was a "confidential employee" or policymaker whose First Amendment rights are outweighed by his public employer's interest in promoting the efficient delivery of public services.  *See e.g., Wiggins v. Lowndes County, Miss.*, 363 F.3d 387, 390 (5th Cir. 2004).   The Court finds that there are genuine disputes of material fact concerning whether Hatten's job duties place him closer to the Road Manager found to be a policymaker in *Gentry v. Lowndes County, Miss.*, 337 F.3d 481 (5th Cir. 2003), or the Road Foreman found to be a lower level employee free from political patronage in *Wiggins, supra*.   Both sides have offered affidavits, depositions, and employment records painting very different pictures of Hatten's duties and responsibilities in ways that would affect the outcome of the balancing test prescribed by the Fifth Circuit.

Dkt. No. 26 at 1–2. These material disputes about the true nature of Plaintiff's job duties remain. In particular, the mere fact that Gregg County described Plaintiff's position as "personal staff" does not establish that Hatten was a "policymaker" or "confidential employee" as those terms are used in *Wiggins*. *Cf. Garcetti v. Ceballos*, 547 U.S. 410, 424–25 (2006) ("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform"). These fact disputes foreclose summary judgment.

Defendant also contends that its interests in maintaining an orderly and efficient workplace outweigh Plaintiff's protected speech interests even if Plaintiff's position was not one of a policymaker or confidential employee. Defendant contends that Plaintiff exhibited an "abusive personality," "was disrespectful to Commissioner Mathis," and made various derogatory or offensive remarks to Mathis and others. Dkt. No. 66 at 17–19. Defendant therefore contends it

was justified in terminating Plaintiff in light of his performance and behavior.

Although Defendant frames this as a balancing argument under the third prong of *Alexander*, it is really a causation argument. Defendant is arguing that Plaintiff was terminated for reasons other than his allegedly protected speech. Defendant does not attempt to argue that it terminated Hatten <u>because</u> he ran for office against Mathis and that it was justified in doing so. *See Jordan*, 516 F.3d at 299 ("We need not pause long on the balancing, for there is no record evidence that Jordan's political activities caused disruptions that would justify termination . . . The purported incidents leading to Jordan's termination bore no relation to any of Jordan's political activities—indeed, Defendants maintain Jordan was *not* fired because of her political activities.").

Viewing this for what it is, a causation argument, there exist material fact disputes about whether Plaintiff's "performance and behavior" was a cause of his termination. For example, Commissioner Mathis testified that Plaintiff was terminated because of restructuring and not due to his job performance. Dkt. No. 71-2 at 9:11–10:17 ("But it didn't have to do with his performance. A. No, huh-uh, no. . . . Any of his write-ups didn't have anything to do with his termination. A. No."). Moreover, Plaintiff submits summary judgment evidence that his alleged performance issues were pretextual or "bogus" and were manufactured in retaliation for reporting variances in the precinct's fuel use or for running against Mathis in the election. *See generally* Dkt. No. 71 at 9–12; *see also* Dkt. No. 71-3 at ¶¶ 17–29, 38. Plaintiff also contends Mathis did not meaningfully investigate reports of Plaintiff's alleged bad behavior. Dkt. No. 71-2 at 37:13–15 ("Q. You didn't want to get his side of the story, Billy's side of the story? A. It wasn't going to do no good. . . . When people make accusations like that and you confront them, they're going to lie. So, why bother?"); *id.* at 61:22–25 ("Q. And then what did Billy say? A. I didn't talk to Billy.

5

Q. You didn't get Billy's side of the story? A. No."). This testimony tends to support Plaintiff's assertion that the accusations against him were not the reason he was terminated.

Accordingly, there exist material fact disputes as to whether Plaintiff exhibited "performance and behavior" issues and whether such issues were a cause of his termination.

> ### 2.    Causation

Defendant also argues that it is entitled to summary judgment on the causation element of the *Alexander* test because, in Texas, the sole authority for adopting a county's budget is vested with the Commissioners Court (Tex. Local Gov't Code § 111.008) and Plaintiff cannot show that the Commissioners Court acted with a retaliatory motive when it adopted a budget that eliminated Hatten's position. Dkt. No. 66 at 19–28.

Municipal liability for constitutional torts arises when the execution of an official policy causes the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality." *Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir. 1998). Whether a local government official possesses final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

Plaintiff submits summary judgment evidence that raises a material issue of fact as to whether Commissioner Mathis acted with a retaliatory motive toward Plaintiff. *See, e.g.*, Dkt. No. 71-3 at ¶22; Dkt. No. 71-2 at 247–49. However, Commissioner Mathis is not subject to liability in this lawsuit, only Gregg County is. Dkt. No. 26. Therefore Plaintiff must carry his summary judgment burden as to one or more of the following theories of liability: (1) that Mathis had final policymaking authority on behalf of Gregg County to terminate Hatten, (2) that the Commissioners Court "rubber stamped" Mathis's decision, or (3) that the Commissioners Court

approved Mathis's decision and ratified the allegedly retaliatory basis for that decision.

Plaintiff contends that "Mathis, not the Commissioners Court, not the County Judge, and not the Human Resources Department made the decision about who had a job at Precinct 4 and who did not." Dkt. No. 71 at 27. Notwithstanding the Commissioners Court's power of the purse, Plaintiff argues that the County Commissioner is the official who decides who to hire and fire in his precinct. *Id.* at 27–28. Plaintiff submits evidence that commissioners had the authority to hire and fire their staff. *See* Dkt.  No. 71-2 at 142:5–7 ("I brought my own staff in. Elected officials like county commissioners, sheriffs and everybody bring their own people in."); Dkt. No. 71-3 at ¶ 39 ("On August 19, 2014 John Mathis and Rita Fyffe told me that my job was gone"); Dkt. No. 71-4 at 30–35; Dkt. No. 71-12 at 22:2–4 ("Q. You're going to have to rely on John Mathis' decision on how he's going to work his own budget. A. Yes, uh-huh."); Dkt. No. 71-13 at 22:15–17 ("Q. So, in terms of hiring and firing people, who does that in your precinct? A. I do 100 percent, nobody else.").

Whether a local government official possesses final policymaking authority is a question of law. This court has held that Hatten's termination was an act of the Commissioner's Court in passing the budget. Dkt. No. 26 at 3–4. Commissioner Mathis was a member of the Commissioner's Court who participated in that policymaking decision. He therefore possessed final policymaking authority, as a matter of state law, over the decision to terminate Hatten.

Moreover, under the "rubber stamp" exception, a plaintiff may show that the "ultimate decision maker's action is merely a 'rubber stamp' for the subordinate's recommendation." *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001). Even if Mathis had not possessed final policymaking authority, Plaintiff's summary judgment evidence would be sufficient to raise a material question of fact about whether the Commissioner's Court regularly rubber stamped the

hiring and firing decisions of elected county officials such as Mathis.

Plaintiff does not present any evidence or argument in support of a ratification theory of liability. Because Plaintiff's liability theory survives summary judgment on the issue of causation, the Court need not address this third, un-asserted causation theory.

### B.      Hatten's Motion for Summary Judgment

Plaintiff Billy Hatten moves for summary judgment that: (1) Gregg County is not protected from liability by sovereign immunity, (2) that Gregg County has not established Plaintiff failed to mitigate damages, and (3) that Hatten is not exempt from First Amendment protections under the *Elrod/Branti* doctrine. Dkt. No. 67.

#### 1.      Sovereign Immunity

Plaintiff argues it is entitled to summary judgment that Gregg County is not protected from liability by sovereign immunity. Dkt. No. 67 at 8; *Monell v. City of Arlington*, 436 U.S. 658, 690 n.54 (1978) ("There is certainly no constitutional impediment to municipal liability. 'The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.'") (*quoting Milliken v. Bradley*, 433 U.S. 267, 291 (1977)).

Defendant does not dispute this; instead Defendant reiterates its causation argument that Plaintiff must prove a final policymaking authority for Gregg County caused the alleged injury. Dkt. No. 70 at 13–14. That causation issue has already been addressed *supra*.

Because Defendant does not contend that sovereign immunity protects Gregg County from liability, the Court need not address this issue further.

#### 2.      Mitigation of Damages

Plaintiff argues it is entitled to summary judgment on Defendant's failure to mitigate

defense. Dkt. No. 67 at 9–11.

Failure to mitigate is an affirmative defense for which the defendant bears the burden of proof. *See NLRB v. Pilot Freight Carriers, Inc.*, 604 F.2d 375, 377 (5th Cir. 1979). The defendant must show "not only that the plaintiff[] failed to use reasonable care and diligence, but that there were jobs available which [he] could have discovered and for which [he] was qualified." *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972). The defendant must prove that the plaintiff could have obtained "substantially equivalent employment," meaning "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir. 1996).

Plaintiff argues that Defendant has identified only jobs that were not "substantially equivalent" to his job as Administrative Superintendent because they paid less or entailed different skills and duties. *See, e.g.* Dkt. No. 67 at 10–11. Defendant rejoins that Plaintiff was compensated above market and that this fact should be taken into account when determining what constitutes "substantially equivalent employment." *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1067 (7th Cir. 1994). Defendant also argues that if an employer can demonstrate that the former employee did not exercise reasonable diligence, it need not prove the availability of equivalent work. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). "Whether the plaintiff has engaged in such an effort is a question of fact." *Migis v. Pearle Vision*, 135 F.3d 1041, 1045 (5th Cir. 1998).

The Court is persuaded that there are multiple material fact disputes that prevent summary judgment on the issue of failure to mitigate, including the extent of Plaintiff's diligence, what constitutes "substantially equivalent employment" to Plaintiff's job as Administrative Superintendent, and whether such employment was available.

3.      The *Elrod*/*Branti* Doctrine

Plaintiff argues that he was not "personal staff" and was therefore not exempt from First Amendment protections. Dkt. No. 67 at 11–14.

Under *Elrod* and *Branti*, an employer is protected from liability under the First Amendment if the employee was a "policymaker" or "confidential" employee. *Elrod v. Burns*, 427 U.S. 347, 368 (1976); *Branti v. Finkel*, 445 U.S. 507, 517 (1980). "A policymaker is an employee 'whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors.'" *Wiggins v. Lowndes County*, 363 F.3d 387, 390 (5th Cir. 2004). "Consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id.*

As discussed *supra* and in the Court's previous Order (Dkt. No. 26), there are fact questions about the nature of Hatten's job duties that prevent summary judgment.

Additionally, the Court notes that the term "personal staff" does not appear in *Elrod*, *Branti*, or *Wiggins* and the parties' fixation on this terminology is misplaced. As explained *supra*, whether Hatten was designated "personal staff" by Mathis or the County may have some probative value, but this is not the dispositive question. The relevant question concerns the specific nature of Hatten's job duties. *Elrod*, 427 U.S. at 367 ("The nature of the responsibilities is critical.")

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 66) is **DENIED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 67) is **DENIED**.

**SIGNED this 1st day of September, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE